IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| REGIONS INSURANCE, INC., ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | NO. 3:16-cv-897 |
| ) | JUDGE TRAUGER |
| BEN R. HANBACK, ) | |
| ) | |
| Defendant ) | |

**MEMORANDUM**

Pending before the court is Defendant's Motion for Summary Judgment (Docket No. 40). Plaintiff has filed a Response (Docket No. 46), and Defendant has filed a Reply (Docket No. 56). Plaintiff filed a Supplement to its Response (Docket No. 61), and Defendant filed a Sur-Reply (Docket No. 65). For the reasons stated herein, Defendant's Motion is **DENIED**.

BACKGROUND

Plaintiff Regions Insurance ("Regions") is a licensed insurance brokerage business, and Defendant Ben Hanback is a former employee of Regions. On October 30, 2013, Regions and Hanback entered into an Account Transfer Agreement, through which Regions purchased all of the customer accounts, insurance relationships and customer information belonging to Hanback's company, Hanback Group, LLC.[1] At the same time and as a condition precedent to the Account Transfer Agreement, Hanback and Regions entered into a Producer Employment Agreement whereby Regions employed Hanback as a full-time insurance producer or agent.

---

[1] According to the First Amended Complaint (Docket No. 38), Hanback was the managing member of Hanback Group.

On February 17, 2016, Hanback terminated his employment with Regions and, according to the First Amended Complaint, breached the Producer Employment Agreement. Hanback went to work for Aon Risk Solutions, another insurance brokerage company. Regions has sued Hanback for breach of contract and breach of the common law duty of loyalty.

## THE CONTRACTS

The Producer Employment Agreement ("PEA") provides, among other things, that:

> The employment of Producer [Hanback] shall be for a period of three (3) years beginning November 1, 2013 and ending October 31, 2016 ("Original Term") with the understanding that Producer's employment with Regions Insurance on and after November 1, 2016, will be at-will and not for any specific period of time and either party to this Agreement may terminate the employment relationship created by this Agreement upon thirty (30) days notice and for any reason.

Docket No. 1-2 at ¶ 4.

The PEA also provides that:

> During the Original Term, Regions Insurance may terminate Producer's employment and this Agreement at any time For Cause, as hereinafter defined. After November 1, 2016, either party may terminate this Agreement and Producer's employment with Regions Insurance at any time for any reason.

Docket No. 1-2 at ¶ 5.

Under the PEA, Hanback agreed that:

> Producer shall devote Producer's full time to the business of Regions Insurance, and Producer shall exert Producer's best efforts in obtaining new and in maintaining existing insurance business for the exclusive use and benefit of Regions Insurance.

Docket No. 1-2 at ¶ 3.

With regard to confidential information (a term that is defined in the PEA), the PEA states:

> Producer agrees, during his employment and thereafter for so long as the Confidential Information remains confidential, not to disclose to any third person or allow or make any disclosure of any Confidential Information and/or Personal Information, unless

2

required to do so by law, and then only after giving Regions Insurance ten (10) business days written notice as provided for in this Agreement before such disclosure.

Docket No. 1-2 at ¶ 7.

The Account Transfer Agreement ("ATA") includes, among other things, certain Restrictive Covenants in which Hanback and Hanback Group agree not to, directly or indirectly, solicit any accounts transferred under the ATA ("Transferred Accounts"); service or place insurance on behalf of any Transferred Account; refer any Transferred Account to another insurance agency or broker; or otherwise interfere with or disrupt the business or contractual relationship between Regions Insurance and any Transferred Account. Docket No. 1-1 at ¶ 11(a). Hanback and Hanback Group also agreed not to solicit the employment of any Regions Insurance employee or otherwise interfere with or disrupt the relationship between Regions and Hanback. *Id*. at ¶ 11(b).

## MOTIONS FOR SUMMARY JUDGMENT

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Pennington v. State Farm Mut. Automobile Ins. Co.*, 553 F.3d 447, 450 (6th Cir. 2009). The party bringing the summary judgment motion has the initial burden of informing the Court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003). The moving party may satisfy this burden by presenting affirmative evidence that negates an element of the non-moving party's claim or by demonstrating an absence of evidence to support the nonmoving party's case. *Id*.

In deciding a motion for summary judgment, the Court must review all the evidence, facts and inferences in the light most favorable to the nonmoving party. *Van Gorder v. Grand Trunk*

*Western Railroad, Inc.*, 509 F.3d 265, 268 (6th Cir. 2007). The Court does not, however, weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). The Court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id.* The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive summary judgment; rather, there must be evidence on which the jury could reasonably find for the nonmoving party. *Rodgers*, 344 F.3d at 595.

## BREACH OF CONTRACT

Term of Employment

In Tennessee,[2] a plaintiff alleging a breach of contract must show: (1) the existence of an enforceable contract; (2) nonperformance amounting to a breach of the contract; and (3) damages caused by the breach. *Thomas v. Meharry Medical College*, 1 F.Supp.3d 816, 828 (M.D. Tenn. 2014); *ARC Lifemed, Inc. v. AMC-Tennessee, Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005).

Regions alleges that Hanback was required by the terms of the PEA to stay employed by Regions as an insurance producer for a mandatory term of three years. Regions claims that Hanback's resignation before the end of that three-year period was a breach of the PEA and the ATA. Regions also contends that Hanback breached the restrictive covenants and the non-disclosure provisions in the ATA and PEA. Hanback, on the other hand, argues that the PEA does *not* require him to stay employed for three years (so long as he provides thirty days notice of his intent to resign) and he did not breach the contract, the restrictive covenants or the non-disclosure provisions.

---

[2] Both the PEA and the ATA expressly provide that they shall be governed by Tennessee law. Docket No. 1-1 at ¶ 222 and Docket No. 1-2 at ¶ 25.

4

In interpreting a contract, the role of the court is to ascertain and give effect to the intent of the parties. *Spirit Broadband, LLC v. Armes*, 2017 WL 384248 at * 6 (Tenn. Ct. App. Jan. 27, 2017); (citing *Allmand v. Pavletic*, 292 S.W.3d 618, 630 (Tenn. 2009)).The task is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contract language. *Planters Gin Co. v. Federal Compress & Warehouse Co., Inc.*, 78 S.W.3d 885, 889-90 (Tenn. 2002). If the language of the contract is clear and unambiguous, the literal meaning controls the outcome of the dispute. *Maggart v. Almany Realtors, Inc.*, 259 S.W.3d 700, 704 (Tenn. 2008). The interpretation should be one that gives reasonable meaning to all the provisions of the agreement, without rendering portions of it neutralized or without effect. *Id*. Determination of the intention of the parties is generally treated as a question of law because the words of the contract are definite and undisputed, and in deciding the legal effect of the words, there is no genuine factual issue left for a jury to decide. *Planters Gin*, 78 S.W.3d at 890.

Sometimes, however, a contractual provision may be susceptible to more than one reasonable interpretation, rendering the terms of the contract ambiguous. *Maggart*, 259 S.W.3d at 704. A contract is ambiguous only when it is of uncertain meaning and may fairly be understood in more ways than one. *Id*. Ambiguity does not arise in a contract merely because the parties may differ as to interpretations of certain of its provisions. *Id*. Where the terms of the contract are ambiguous, the intention of the parties cannot be determined by a literal interpretation of the language, and the court must resort to other rules of construction. *Planters Gin*, 78 S.W.3d at 890; *West v. Shelby County Healthcare Corp.*, 459 S.W.3d 33, 42 (Tenn. 2014). Only if the ambiguity remains after application of the pertinent rules of construction does the legal meaning of the contract become a question of fact. *Cummings Inc. v. Dorgan*, 320 S.W.3d 316, 333 (Tenn. Ct. App. 2009).Then the court must

examine other evidence, such as the negotiations leading up to the contract, to ascertain that intention. *Id*.

As indicated above, the provisions of the PEA related to this issue are:

> 4. <u>Term of Employment</u>. The employment of Producer [Hanback] shall be for a period of three (3) years beginning November 1, 2013 and ending October 31, 2016 ("Original Term") with the understanding that Producer's employment with Regions Insurance on and after November 1, 2016, will be at-will and not for any specific period of time and either party to this Agreement may terminate the employment relationship created by this Agreement upon thirty (30) days notice and for any reason.

Docket No. 1-2 at ¶ 4.

> 5. <u>Termination of Employment</u>. During the Original Term, Regions Insurance may terminate Producer's employment and this Agreement at any time For Cause, as hereinafter defined. After November 1, 2016, either party may terminate this Agreement and Producer's employment with Regions Insurance at any time for any reason.

Docket No. 1-2 at ¶ 5.

Under Regions' interpretation, paragraph 4 provides that either party may terminate the employment relationship upon thirty days notice[3] and for any reason only *after* November 1, 2016. Paragraph 5 provides that after November 1, 2016, either party may terminate the employment relationship at any time for any reason, but this paragraph does not repeat the requirement of thirty days notice. Paragraph 5 also provides that Regions may terminate the employment relationship "for cause" during the Original Term, but there is no provision or mechanism that allows Hanback to terminate the agreement for any reason at all during the Original Term.

---

[3] It is undisputed that Hanback did not provide thirty days notice of his resignation.

Under Hanback's interpretation, paragraph 4 provides that either party may terminate the agreement, at any time, with thirty days notice, for any reason. However, this interpretation renders meaningless most of paragraph 5 and the three-year term provided in paragraph 4.

Paragraph 4 provides that Hanback's employment after November 1, 2016, will be "at-will," implying that, before November 1, 2016, Hanback's employment was not "at-will," which is consistent with Regions' argument that Hanback was required to work for Regions for the three-year Original Term. In addition, the provision of an Original Term, specifically identified, would be superfluous if the entire employment relationship were "at-will," subject to either party's terminating it at any time, with or without thirty days notice.

The interpretation that the Court gives to the contract should be one that gives reasonable meaning to all of the provisions of the agreement, without rendering portions of it neutralized or without effect. The entire agreement must be considered. *Maggart*, 259 S.W.3d at 704; *Spirit Broadband*, 2017 WL 384248 at * 6. Although perhaps inartful, the language at issue here is not ambiguous,[4] and the only interpretation that gives effect to all provisions is the one that provides that, *after* November 1, 2016, either party may terminate the employment relationship, for any reason, upon giving the required thirty days notice. Until November 1, 2016, Hanback's employment was for an "Original Term" of three years. After November 1, 2016, Hanback's employment was "at will."

---

[4] Hanback argues that testimony from Regions' Regional Executive, Mark Forrester, supports his position that he could have terminated his contract at any time. The court could consider this testimony only if it had found the contract language to be ambiguous. Otherwise, the court may not look beyond the four corners of the contract to ascertain the parties' intention. *Eagle CDI, Inc. v. Orr*, 2017 WL 2350156 at * 5 (Tenn. Ct. App. May 31, 2017) (citing *Rogers v. First Tenn. Bank Nat'l Ass'n,* 738 S.W.2d 635, 637 (Tenn. Ct. App. 1987)).

Confidential Information

Regions also asserts that Hanback breached the PEA's provision on confidential information, to which Hanback agreed, during his employment and thereafter, for so long as the Confidential Information (defined in the contract) remains confidential, not to disclose to any third person or allow or make any disclosure of any Confidential Information, unless required to do so by law. Docket No. 1-2 at ¶ 7. Regions contends that an email from Michael Parrish at Aon Risk Solutions to Mark Forrester at Regions is evidence that Hanback shared information with Parrish about Plaintiff's accounts.

Hanback denies that this information was confidential and asserts that Forrester disclosed the same information to Parrish. The court finds that there are genuine issues of material fact with regard to whether this information was confidential and whether Hanback breached the non-disclosure provisions of the PEA, so Hanback's Motion for Summary Judgment on this issue will be denied.

Full-Time Employment

The PEA provides that Hanback shall devote his full time to the business of Regions Insurance and shall exert his best efforts in obtaining new and in maintaining existing insurance business for the exclusive use and benefit of Regions Insurance. Docket No. 1-2 at ¶ 3. Regions asserts that Hanback violated this provision when he stopped dedicating his time to his job duties with Regions while he was interviewing for the job with Aon. For example, Regions alleges that one of its accounts, Foundations Recovery Network, left Regions in late 2015, a loss that "may have been prevented," had Hanback been dedicating his time and attention to his job responsibilities at Regions. Docket No. 57 at ¶ 18. "May have been prevented" is merely speculation as to this alleged loss of business. Regions also avers that Hanback was communicating with another client of

Regions, John Rowley, sharing that he had a "deal on the table" with Aon. By February of 2017, Rowley was no longer a client of Regions. Regions argues that this implies both distraction of Hanback and disruption of Regions' business. In addition, Regions asserts that Hanback spent time communicating with Aon, by phone, email and text messages, while he was still employed with Regions.

Hanback, on the other hand, states in his Affidavit that he did not pursue business opportunities for Aon or work on behalf of Aon in any way while employed at Regions. Docket No. 43-5 at ¶ 9. He argues that he generated new business for Regions, even in the last months of his employment, and that his communications with Rowley had nothing to do with Rowley's leaving Regions. What Hanback did or did not do with regard to full dedication to Regions employment and whether his actions/inactions caused any loss to Regions' business raise genuine issues of material fact that cannot be determined on summary judgment, so Hanback's Motion for Summary Judgment on this issue will be denied.

Account Transfer Agreement

Regions contends that, in addition to breaching the PEA, Hanback breached the restrictive covenants and the non-disclosure provision in the ATA.[5] The restrictive covenants of the ATA provide, among other things, that, for a period of three years after October 31, 2013, Hanback shall not interfere with or disrupt the relationship between himself and Regions or otherwise interfere with or disrupt the relationship between Regions and any Transferred Accounts. Docket No. 1-1 at ¶ 11.

---

[5] Execution of the PEA was a condition precedent to the execution of the ATA. Docket No. 1-1 at ¶ 6(c)(15).

In addition, the ATA prohibits Hanback from disclosing, divulging or making use of any Transferred Accounts Information, other than to disclose such information to Regions. *Id*.

Regions claims that Hanback's resigning before the end of the three-year term was disruptive to its business, in breach of the ATA.[6] Regions asserts that it invested time and energy in Hanback so he could learn the company, learn the business, and help grow the business. Regions contends that Hanback brought new relationships to the company that he had an obligation to maintain and that, after Hanback left, the company had no one else to handle its employee benefits business in Nashville.

Hanback, on the other hand, contends that there is no evidence that he took any actions to come between Regions and its clients. He argues that he did nothing to interfere with Regions' business, citing to his own Affidavit (Docket No. 43-5) and to testimony from Forrester as follows:

> Q. Other than the fact of his leaving, did Mr. Hanback do anything else by way of action or inaction to interfere with or disrupt the business or contractual relationship?
>
> A. Not that I am aware of today.

Docket No. 43-2 at p. 24 (p. 40 of Forrester's deposition).

> Q. As you sit here today, you don't have any information that would cause you to contend that Mr. Hanback was responsible for the departure of any of these clients from Regions other than the mere fact of his leaving Regions employment?
>
> A. That is correct.

Docket No. 43-2 at p. 60 (p. 87 of Forrester's deposition).

---

[6] In a supplemental filing, Regions asserts that one of Regions' clients, First Acceptance Corporation, terminated its relationship with Regions and appointed Aon (Hanback's current employer) as its broker of record. Docket No. 61. Hanback contends that Regions has presented no evidence that he was involved in soliciting this business or that he otherwise was the cause of this business moving to Aon. Docket No. 65.

But Forrester also testified that Hanback was the face of Regions' employee benefits business in the Nashville market, the person with whom its customers had the relationship, Docket No. 43-2 at p. 71 (p. 123 of Forrester's deposition), and that part of the inducement of paying Hanback for the Transferred Accounts was the fact that he would become an integral part of Regions' business and would help Regions grow that business. Docket No. 43-2 at p. 53 (p. 80 of Forrester's deposition).

The court finds that there are genuine issues of material fact as to whether Hanback's resignation interfered with or disrupted the business of Regions. With regard to disclosure of information in violation of the ATA, as with the alleged violation of the Confidential Information portion of the PEA, there are disputed factual issues as to what was confidential, what Hanback disclosed, and whether Regions was damaged in any way by Hanback's actions.

For these reasons, Defendant's Motion for Summary Judgment as to Plaintiff's breach of contract claim will be denied.

## BREACH OF THE DUTY OF LOYALTY

Regions also alleges that Hanback breached his common law duty of loyalty as a Regions employee. Under Tennessee law, an employee owes his employer a fiduciary duty of loyalty and must act solely for the benefit of the employer with regard to matters within the scope of his employment. He must not engage in conduct that is adverse to the employer's interests. *Williams-Sonoma Direct, Inc. v. Arhaus, LLC*, 304 F.R.D. 520, 529 (W.D. Tenn. 2015).

Regions contends that Hanback shared confidential information with Michael Parrish at Aon, in breach of his duty of loyalty to Regions. As indicated above, there are disputed facts with regard to whether the shared information was confidential and whether the sharing of that information harmed Regions.

11

Regions also alleges that Hanback attended a Regions sales meeting in Memphis after he had accepted the position with Aon. Regions asserts that there "would be no reason for an employee who had already accepted a job with a competitor and who was planning to quit in the next few days to attend the meeting, other than to obtain confidential and proprietary information for use in future ventures for his new employer." Docket No. 46 at p. 15. This assertion is speculative at best, and the company has not pointed to any evidence of a causal connection between attendance at this meeting and any harm to Regions.

In addition, Regions claims that Hanback spent a significant amount of company time shirking his actual job duties with Regions while communicating and meeting with Aon. Hanback responds that Regions has produced no evidence that he neglected his duties as an employee. Regions argues that Hanback sent emails to employees of Aon and also to a client of Regions during this time, but Hanback maintains that the emails did not take time away from his duties with Regions and only one was sent during business hours.

As with the breach of contract claim, Regions has sufficiently raised issues of material fact with regard to what Hanback did and did not do, what he shared, when he shared it, and whether his actions harmed Regions. Hanback's Motion for Summary Judgment on this issue will also be denied.

## DAMAGES TO REGIONS

Finally, Hanback argues that Regions has failed to demonstrate that it has suffered any damages as a result of his resignation. As set forth above, there are disputed issues of fact both as to Hanback's actions and as to any causal connection to damages sustained by Regions. Therefore, Hanback's Motion for Summary Judgment on this issue will be denied.

## CONCLUSION

For all these reasons, Hanback's Motion for Summary Judgment will be DENIED. An appropriate Order will be entered.

ENTERED this 20th day of September 2017.

_____
ALETA A. TRAUGER
UNITED STATES DISTRICT JUDGE